Stephen G. Recordon (SBN 91401)
**Recordon & Recordon**
225 Broadway, Suite 1900
San Diego, CA  92101
Phone: (619) 232-1717
Facsimile: (619) 232-5325
Email: sgrecordon@aol.com

Attorneys for Plaintiff NATHANIEL WILSON

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHANIEL WILSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> SIR FITNESS VISTA, LLC doing ) <br> business as CRUNCH VISTA and ) <br> ABC FINANCIAL SERVICES, INC, ) <br> ) <br> ) <br> Defendants. ) <br> _____ ) | Case No. **'17CV411   MMAWVG** <br><br> COMPLAINT FOR VIOLATIONS OF <br> 1. THE ELECTRONIC FUNDS TRANSFER ACT; <br> 2. THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT; <br> 3. THE CALIFORNIA FAIR DEBT COLLECTION PRACTICES ACT; and <br> 4. THE CONSUMER LEGAL REMEDIES ACT |

## INTRODUCTION

1.     Plaintiff Nathaniel Wilson, through his counsel, brings this action to challenge the acts of SIR Fitness Vista, LLC, doing business as "Crunch Vista" (hereinafter "Crunch Vista") and ABC Financial Services, Inc ("ABC")(collectively, "Defendants") regarding Defendants' unauthorized withdrawals of funds from Plaintiff's checking account and other violations of the Electronic Funds Transfer Act ("EFTA"), regarding attempts by Defendants to unlawfully and abusively

collect a debt allegedly owed by Plaintiff, and regarding the misrepresentation of Plaintiff's contractual rights, and this conduct caused Plaintiff damages.

2. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to a plaintiff, or to a plaintiff's counsel, which Plaintiff alleges on personal knowledge.

3. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

4. Any violations by Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

## JURISDICTION AND VENUE

5. As to subject matter jurisdiction, jurisdiction of this Court arises pursuant to 15 U.S.C. §1693m(g), 15 U.S.C. § 1692(k), and 28 U.S.C. § 1367 for supplemental state claims.

6. This action arises out of both Defendants' violations of the Electronic Funds Transfer Act, 15 U.S.C. §§1693 et seq ("EFTA") and the Consumer Legal Remedies Act, Cal. Civil Code §§1750 et seq ("CLRA") and Defendant ABC's violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA"), and the California Fair Debt Collection Practices Act ("Rosenthal Act" or "CFDCPA").

7. As both Defendants do business in the state of California, and committed the acts that form the basis for this suit with the intent to cause effects in the state of California, this Court has personal jurisdiction over Defendants for purposes of this action.

8. Venue is proper as Defendants do business in the County of San Diego and the acts at issue took place in the County of San Diego.

/ / /

/ / /

## PARTIES

9. Plaintiff is a natural person, an adult, and resides in San Diego County, California.

10. Plaintiff is informed and believes and thereon alleges that Defendant Crunch Vista is a California limited liability company, based in San Diego, California, registered as "SIR Fitness Vista, LLC" and doing business in the state of California as "Crunch Vista."

11. Plaintiff is informed and believes and thereon alleges that Defendant ABC is an Arkansas corporation doing business in the state of California.

12. Plaintiff is informed, believes, and on that basis alleges that at all times mentioned in this Complaint, Defendants were the agents, servants, and/or employees of their co-Defendants and in doing the things alleged in this Complaint were acting within the course and scope of said agency, authority, and employment.

13. Defendant ABC is a person who uses an instrumentality of interstate commerce or the mails in a business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and is therefore a debt collector as that phrase is defined by 15 U.S.C. § 1692a(6).

14. Defendant ABC, in the ordinary course of business, regularly, on behalf of himself, herself, or others, engages in debt collection as that term is defined by California Civil Code § 1788.2(b), is therefore a debt collector as that term is defined by California Civil Code § 1788.2(c).

15. Defendant ABC claimed that Plaintiff is obligated to pay a debt, and therefore Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

16. Plaintiff sought health and fitness services for personal purposes, and is a "consumer" as defined by Cal. Civ. Code § 1761(d).

/ / /

/ / /

17. Plaintiff is a natural person from whom a debt collector sought to collect a consumer debt which was due and owing or alleged to be due and owing from Plaintiff, and is a "debtor" as that term is defined by California Civil Code § 1788.2(h).

18. This case involves money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction. As such, this action arises out of a consumer debt and "consumer credit" as those terms are defined by Cal. Civ. Code § 1788.2(f).

## FACTS COMMON TO ALL CAUSES OF ACTION

19. On June 10, 2016, Plaintiff Nathaniel Wilson went to the business facility, a gymnasium, of SIR Fitness Vista, LLC, doing business as "Crunch Vista"(hereinafter, "Crunch Vista") in order to use the restroom.

20. Plaintiff is disabled; he is partially visually impaired and uses an electric wheelchair.

21. While Plaintiff was at Crunch Vista, Crunch Vista's employees or agents offered Plaintiff a membership at Crunch Vista for $9.95 per month, and Plaintiff accepted this offer.

***No copy of Membership Agreement provided***

22. Crunch Vista's employee or agent then prepared an electronic document on their computer, and Plaintiff could not see it.

23. Periodically, Crunch Vista's employee or agent would provide access to the screen and then asked Plaintiff to "sign here" on the screen.

24. Crunch Vista did not provide Plaintiff with a copy of this document ("Membership Agreement") either before asking for his electronic signature or afterwards that day.

25. Plaintiff later called Crunch Vista's corporate office and asked for a copy of the Membership Agreement, and Crunch Vista stated that they would mail or email a copy to Plaintiff. Crunch Vista did no keep this promise, and it was not

until Plaintiff retained counsel months later that Crunch Vista finally provided Plaintiff with a copy of the Membership Agreement.

26. The above failure to provide a copy of the Membership Agreement to Plaintiff at the time he signed it both violates 15 USC 1693(a) and 12 CFR 1005.10(b), and rendered any withdrawal of money from Plaintiff's account as unauthorized and unlawful pursuant to the above under Reg. E Official Interpretations §1005.10(b)-2 [§205.10(b)-2].

27. A true and correct copy of this Membership Agreement is attached hereto as Exhibit A.

*Surreptitious EFT "Authorizaton"*

28. Crunch Vista's employee or agent asked Plaintiff for his debit card in order to make the first month's payment. Crunch Vista's employee or agent then copied this information and placed it in the Membership Agreement, but never told Plaintiff that Crunch Vista planned to use this information to give themselves repeated and long term access to Plaintiff's account.

29. Crunch Vista's employee or agent then asked Plaintiff to sign inside a pre-printed box on the Membership Agreement.

30. In this box, which Plaintiff could not clearly see, the contract provides Plaintiff's authorization for Crunch Vista's agent "ABC Financial Services, Inc" to withdraw funds from Plaintiff's bank account.

31. In the parlance of Crunch Vista's pre-printed "Membership Agreement," Plaintiff "requests" the "privilege of paying to ABC Financial Services, Inc," and authorizes ABC Financial to draw "items," including electronic funds transfer, from Plaintiff's account "for the purpose of paying said payments."

32. This part of the Membership Agreement referred to the last four digits of Plaintiff's debit card.

/ / /

/ / /

33. As "ABC Financial Services, Inc" (hereinafter, "ABC") is listed as a beneficiary under the Membership Agreement, and has rights and duties under the agreement as an agent of Crunch Vista.

34. Therefore, ABC is a party to the Membership Agreement, is an agent of Crunch Vista, and is jointly and severally liable with Crunch Vista for the unlawful acts committed by these parties described herein.

35. The fact that Crunch Vista and ABC are both joint parties to and liable for the provisions of the Membership Agreement is further substantiated by the fact that both of these parties are referred to as "the Company" in the Membership Agreement: they are effectively treated as a single party. (Hereinafter, Crunch Vista and ABC are referred to jointly as "Defendants")

36. When Plaintiff electronically "signed" this portion of the Membership Agreement, he could not see the print on the computer screen as he has been visually impaired since birth, and was never provided with a printed copy he could hold close enough to review.

37. Instead, Plaintiff was asked to glance at a computer screen he could not clearly see and sign.

38. The failure to provide a copy of this "authorization" to Plaintiff at the time he signed it violates 15 USC 1693(a) and 12 CFR 1005.10(b). See *In re Easysaver Rewards Litig*, 737 F Supp 1159, 1183 (SD Cal, Aug 13, 2010)

39. Not only did Defendants not tell Plaintiff that they planned to use his debit card information to grant themselves repeated access to his account, they also did not tell Plaintiff that they require access to all of their client's bank account as a pre-condition to granting membership in their health clubs.

40. The Membership Agreement, at section 1.7, provides in pertinent part that:

> "Monthly dues and incidental charges are payable by Electronic Funds Transfer ("EFT") from the Member or Buyer's checking account, savings account, credit card account or debit card account. **Members**

Complaint
-6-

**or Buyers must authorize payments to be made through a third party administered electronic funds transfer system.**" (*emphasis added*).

41. By compelling Plaintiff to make payments by electronic funds transfer as a condition for extending to credit, Defendants violated 15 USC 1693k(1) and 12 CFR 1005.10(e)(1).

*Misrepresentation of the rights of the parties and unlawful and deceptive attempts to waive substantive rights*

42. In the pre-printed Membership Agreement, which was not provided to Plaintiff, Defendants attempted to force Plaintiff to agree to the waiver of important federal rights that, as a matter of law, may not be waived.

43. In the pre-printed box on the Membership Agreement referred to above, in miniscule print, Defendants' form provides that:

> If the regular payments set forth on the payment schedule should vary in amount, you are entitled to notice at least 10 days before each payment of when it will be made and how much it will be. However, by executing this preauthorization, you choose to instead get this notice only when the payment would differ by more than $50.00 from the most recent payment.

44. It is obvious from the above that Defendants are familiar with 12 CFR 1005.10(d), which provides as follows:

> *Notice of transfers varying in amount*—(1) *Notice.* When a preauthorized electronic fund transfer from the consumer's account will vary in amount from the previous transfer under the same authorization or from the preauthorized amount, the designated payee or the financial institution shall send the consumer written notice of the amount and date of the transfer at least 10 days before the scheduled date of transfer.
>
> 12 CFR 1005.10(d)(authorized by 15 USC 1693e(b))

45. If Defendants had the knowledge necessary to disclose Plaintiff's rights under 12 CFR 1005.10(d), then they are certainly familiar as well with

Complaint

-7-

15 USC 1693*l*, which provides that Plaintiff's rights under the EFTA, such as the rights above, *cannot be waived*, and 12 CFR 1005.12(c)(2)(i), which provides that "no exemption shall extend" to the civil liability provisions of the Act.

46.  In other words, Defendants willfully misrepresented to Plaintiff that if he wanted to obtain a gym membership, not only did he have to agree to electronic fund transfers, but he also was not entitled to notice of irregular withdrawals over $10.00, despite the fact that federal law provides for such notice.

47.  Defendants claimed the right to re-write federal law to their liking, despite the lack of any right to do so.

48.  Under Section 2 of the Membership Agreement, entitled "Member Risk," Defendants' pre-printed form provides that Plaintiff will "hold Crunch Vista harmless" from any damage caused by Crunch Vista's *own acts*, involving a Crunch Vista facility *and any other membership activities*, unless they rise to the level of willful misconduct or gross negligence.

49.  In other words, Defendants attempted to induce or trick Plaintiff into waiving any rights Plaintiff may have in the future against Crunch Vista, including common law negligence, as well as statutory rights, including Plaintiff's federal rights under the EFTA, or under California's Rosenthal Act, which may not be waived.

50.  In California, with the exception of a section 1542 waiver, only known rights may be waived:

> Waiver always rests upon intent. Waiver is the intentional relinquishment of a known right after knowledge of the facts.
> *City of Ukiah v. Fones* 64 Cal.2d 104, 107–108 (1966)

51.  With no knowledge of future facts, claims based on future acts cannot be waived at all. *Id* Furthermore, many statutory rights may not be waived whether known or not. Defendants' attempt to pre-emptively waive Plaintiff's future rights

and claims is both unconscionable, and a misrepresentation of Plaintiff's rights under the Membership Agreement.

*False warranty*

52. In the pre-printed Membership Agreement, which Plaintiff could not see clearly and which was not provided to Plaintiff until months later, Defendants also placed a false warranty as to Plaintiff's health, in an attempt to pre-emptively waive any potential clams regarding physical injury or deterioration.

53. In the Membership Agreement at section 2.1, the Membership Agreement provides that Plaintiff is "in good health and has no disability, impairment, injury, disease or ailment preventing him or her from engaging in active or passive exercise or which could cause increased risk of injury or adverse health consequences as a result of exercise."

54. Plaintiff entered Crunch Vista's facilities *in an electric wheelchair.*

55. At the time Crunch Vista presented Plaintiff with the Membership Agreement, they made no inquiry regarding his obvious disability.

56. Clearly Crunch Vista knew that the above warranty was false, and yet they presented this form warranty to Plaintiff as the only means available to obtain their services, and additionally hid this fact from him by failing to provide him with a copy of the Membership Agreement.

*Late fees*

57. In section 1.10, the Membership Agreement provides that all monthly balances owed "that are 30 60 and 90 days in arrears are subject to monthly service charges of $15 per month…" and that these fees "may be adjusted from time to time," apparently whenever Crunch Vista wants to do so.

58. These "monthly service charges," also known as "late fees," are unlawful in California unless the party imposing them is a "supervised financial institution" under California Financial Code §4000(9), and follows the guidelines set out in California Financial Code §4001.

Complaint

-9-

59. Plaintiff alleges on information and belief that Crunch Vista is not a "supervised financial institution" and is not entitled to impose late fees, by any name, under California Financial Code §4001.

**"Annual" fee**

60. Despite the fact that Plaintiff signed up for a *month to month* contract, with a set monthly payment of $9.95, in a separate box the Membership Agreement provides that "[y]our next scheduled annual fee of $39.00 will be billed on 08/09/2016."

61. This fee was not disclosed orally to Plaintiff, nor was a copy of Membership Agreement provided to Plaintiff.

62. It is unclear what the purpose of this "fee" is. The "monthly fee" of $9.95 is what Plaintiff agreed to pay in return for the use of Crunch Vista's facilities, and as the agreement is *month to month*, there is no logical tie between an "annual fee" and the number of months that Plaintiff used Crunch Vista's facilities.

63. In a different section of the Membership Agreement, under the category of "Prorated Annual Fee," the amount listed is "$0.00," so there is clearly no agreement to pay some additional fee that is related to the actual months that Plaintiff had the right to use Crunch Vista's facilities.

64. Buried in Section 1.5, the Membership Agreement states that "Member or Buyer shall pay an Annual Fee as set forth in the Recurring Charges section." The Membership Agreement does not identify any "recurring charges" section.

65. This sham fee is unrelated to any actual provision of services on a month to month contract, and is therefore unlawful as it lacks consideration, and is also an unlawful liquidated damages clause.

**Initial payment**

66. Plaintiff made his initial payment by debit card, and did not realize that Defendants intended to use his debit card information for repeated withdrawals from his account.

Complaint

-10-

67. Crunch Vista scanned Plaintiff's debit card, and retained Plaintiff's financial information without his consent or knowledge.

*Use of gym services*

68. Plaintiff than began to use Crunch Vista's facilities, for the months of June and July of 2016.

69. For each of these months, Plaintiff paid his bill with his debit card, and did not know that Crunch Vista had scanned and copied his debt card information previously to extract funds at will from his account.

70. When Plaintiff used his debit card directly, with his consent, at Crunch Vista, the charge appeared on Plaintiff's Bank of America account statements with the text "CHECKCARD 0701 7665 CRUNCH VISTA VIS VISTA."

71. Some of Crunch Vista's equipment was not readily accessible to Plaintiff, who was forced to work around this issue by bracing himself against the wall, and taking similar measures.

72. Other users of the facilities then complained that Plaintiff, who was disabled, took too long using the gym equipment, and began to harass Plaintiff.

73. When Plaintiff complained to Crunch Vista's manager, she told him that he had to be more forgiving, and did nothing to prevent Crunch Vista's other clients from harassing Plaintiff, or to provide readily accessible equipment to Plaintiff.

74. This rather philosophical approach to harassment was less than effective, and Plaintiff stopped using Crunch Vista's services in August.

*Unauthorized EFT withdrawals and unlawful collection letters*

*August 9-10 attempted EFT*

75. On information and belief, on about August 9 or 10, 2016, Defendant ABC, on behalf of Crunch Vista, unlawfully attempted to withdraw $78.95 from Plaintiff's Bank of America account through an electronic funds transfer ("EFT").

/ / /

*August 21, 2016 letter*

76. On or about August 21, 2016, ABC sent Plaintiff a dunning letter, bearing the letterhead of Crunch Vista, and claiming that Plaintiff owed a debt of $78.95, based on a charge of $9.95, a charge of $39.00, and a "late charge" of $30.00.

77. The amount of $39.00 matches the unlawful "annual fee" described in the Membership Agreement, as discussed above.

78. The "late charge" does not match any charge disclosed in the Membership Agreement, but appears to be an unlawful late fee not permitted by California Financial Code §4001.

*August 29, 2016 EFT*

79. On or about August 29, 2016, Defendant ABC, on behalf of Crunch Vista, unlawfully withdrew $78.95 from Plaintiff's Bank of America account.

80. Plaintiff then went to Crunch Vista's facility to demand the return of the $78.95 unlawfully stolen from his account.

*Contract cancellation*

81. Crunch Vista's employees told Plaintiff that they could not return this money.

82. Plaintiff told Crunch Vista that he did not want to continue with his gym membership.

*September 15, 2016 letter*

83. On or about September 15, 2016, ABC sent Plaintiff another letter on Crunch Vista letterhead stating that Plaintiff needed to "update" his membership authorization. This letter was a demand for access to a new account.

84. At this point Plaintiff had already cancelled the month to month Membership Agreement.

/ / /

/ / /

*September 22, 2016 letter*

85. On or about September 22, 2016, ABC sent Plaintiff another letter on Crunch Vista letterhead, demanding that Plaintiff pay not only $9.95 in fees pursuant to the now cancelled Membership Agreement, but that Plaintiff pay an additional $15.00 in unlawful late fees.

*September 28, 2016 notice to Bank of America*

86. Concerned that ABC would continue to unlawfully access his account, on September 28, 2016, Plaintiff went to Bank of America, and told their employee Erica Quintin that he wanted to stop any transfers from his bank account to Crunch Fitness.

87. Ms. Quintin insisted on calling ABC to try to re-establish the right to transfer. Plaintiff made it clear that he was not authorizing any such transfer and then followed up with a written notice regarding the lack of any authorization for any transfer to ABC or Crunch Vista.

88. On October 3, 2016, Defendant ABC, on behalf of Crunch Vista, unlawfully withdrew $9.95 from Plaintiff's Bank of America account.

## ALLEGATIONS SPECIFIC TO CERTAIN CAUSES OF ACTION
## FIRST CAUSE OF ACTION
### (Violations of the EFTA by Crunch Vista and ABC)

89. Plaintiff re-alleges and incorporates herein by reference the allegations contained in the paragraphs above.

90. Plaintiff maintained an "account" as defined in 15 U.S.C. §1693a(2).

91. Plaintiff is a "consumer" as defined by 15 U.S.C. §1693a(5).

92. Defendants engaged in "pre-authorized electronic funds transfers" as that term is defined by 15 U.S.C. §1693a(9).

93. Defendants engaged in "unauthorized electronic funds transfers" as defined by 15 U.S.C. §1693a(11) by withdrawing funds from Plaintiff's account

Complaint
-13-

without Plaintiff's actual consent and without provided a copy of any written authorization to Plaintiff.

94. Defendants also violated 15 U.S.C. §1693e(a) by failing to provide a copy to Plaintiff of any written authorization to withdraw any funds from his account at the time of the purported authorization.

95. Plaintiff is entitled to actual damages sustained as a result of Defendant's conduct, in an amount according to proof; to statutory damages of $1,000; costs of the action; and reasonable attorney's fees, all pursuant to 15 U.S.C. §1693m.

## SECOND CAUSE OF ACTION
### (Violations of the FDCPA by ABC)

96. Plaintiff re-alleges and incorporates herein by reference the allegations contained in the paragraphs above.

97. Defendant ABC violated the FDCPA. Defendant's violations include, but are not limited to the *following*:

    a. *15 U.S.C. §1692d* by engaging in behavior the natural consequence of which is to harass, abuse or oppress;
    b. *15 U.S.C. §1692e* by making a false, deceptive or misleading misrepresentation in the collection of a debt;
    c. *15 U.S.C. §1692e(2)* by misrepresenting the character, amount and legal status of a debt;
    d. *15 U.S.C. §1692e(10)* by use of a false representation or deceptive means to collect a debt;
    e. *15 U.S.C. §1692f(10)* by use of an unfair or unconscionable means to collect or attempt to collect a debt.

98. Plaintiff is entitled to actual damages sustained as a result of Defendant ABC's conduct, in an amount according to proof; to statutory damages of $1,000; costs of the action; and reasonable attorney's fees, all pursuant to *15 U.S.C. §1692k*.

/ / /

/ / /

Complaint

## THIRD CAUSE OF ACTION

### (Violations of the Rosenthal Act by ABC)

99.  Plaintiff repeats, re-alleges, and incorporates by reference all the allegations contained in the paragraphs above.

100.  Based on information and belief, Defendant ABC's violations of *California Civil Code § 1788.17*, which incorporates several of the provisions of the FDCPA, include, but are not limited to, the following:

   a.  *15 U.S.C. §1692d* by engaging in conduct the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

   b.  *15 U.S.C. §1692e* by making a misrepresentation in the collection of a debt;

   c.  *15 U.S.C. §1692e(2)* by misrepresenting the character, amount or legal status of the alleged debt;

   d.  *15 U.S.C. §1692e(10)* by using false, deceptive, or misleading representations or means in connection with the collection of a debt allegedly owed by Cross-Complainant;

   e.  *15 U.S.C. §1692f* by using an unfair or unconscionable means to collect or attempt to collect a claimed debt; and

   f.  *15 U.S.C. §1692f(1)* by collecting an amount not expressly authorized by the agreement creating the debt or permitted by law.

101.  Defendant ABC's violations of the Rosenthal Act were willful and knowing, thereby entitling Plaintiff to statutory damages pursuant to *Civil Code § 1788.30(b)*.

102.  As a proximate result of the violations of the Rosenthal Act committed by Defendant ABC, Plaintiff is entitled to any actual damages pursuant to California Civil Code § 1788.30(a); statutory damages in an amount up to $1,000.00 each

pursuant to California Civil Code § 1788.30(b); and, reasonable attorney's fees and costs pursuant to California Civil Code § 1788.30(c) from Defendant ABC.

## FOURTH CAUSE OF ACTION

### (Violations of the CLRA by all Defendants)

103. Plaintiff repeats, re-alleges, and incorporates by reference all the allegations contained in the paragraphs above.

104. Plaintiff is a "consumer" as defined by Cal. Civ. Code § 1761(d).

105. The gym membership at issue in this action constitutes a "service" as defined by Cal. Civ. Code § 1761(b).

106. The acts and practices of Defendants as discussed throughout the Complaint, constitute "unfair or deceptive acts or practices" by Defendants, that are unlawful, as enumerated in section 1770(a) of the California Civil Code, specifically in at least the following CLRA provisions:

   a. California Civil Code §1770(a)(5): Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have.

   b. California Civil Code §1770(a)(7): Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

   c. California Civil Code §1770(a)(14): Representing that a transaction confers or involves rights, remedies or obligations that it does not have or involve, or which are prohibited by law; and

   d. California Civil Code §1770 (a)(19): Inserting an unconscionable provision in a contract.

107. Plaintiff would not have entered the Membership Agreement had he realized that the Membership Agreement contained unconscionable clauses, waivers of future tort and statutory rights, unlawful late fees, a sham "annual fee" on a

Complaint

-16-

month to month contract, and an attempted authorization to pilfer funds from Plaintiff's Bank of America account, or that Crunch Vista was not willing or able to provide readily accessible gym equipment to Plaintiff, and would allow Crunch Vista's other patrons to harass plaintiff..

108. On information and belief, Defendants' conduct alleged herein was and is fraudulent within the meaning of Cal. Civil Code § 3294(a) and (c)(3), and all such conduct was undertaken with the advanced authorization of officers, directors and/or authorized agents of Defendants.

109. Pursuant to § 1780(d) of the CLRA, attached hereto as Exhibit B is the affidavit showing that this action has been commenced in the proper forum.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against all named Defendants, and pray for the following relief:

*EFTA*

1. An award of actual damages pursuant to 15 U.S.C. § 1693m against all named Defendants and for the Plaintiff;
2. An award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1693m against all named Defendants and for the Plaintiff;
3. An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1693m against all named Defendants;

*FDCPA*

4. An award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against Defendant ABC and for the Plaintiff;
5. An award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A) against Defendant ABC and for the Plaintiff;
6. An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3) against Defendant ABC;

/ / /

*CFDCPA/Rosenthal Act*

7. An award of actual damages pursuant to California Civil Code § 1788.30(a) against Defendant ABC and for the Plaintiff;

8. An award of statutory damages of $1,000.00 pursuant to California Civil Code § 1788.62(a)(1) against Defendant ABC and for Plaintiff;

9. An award of costs of litigation and reasonable attorney's fees, pursuant to California Civil Code § 1788.30(c) against all named Defendants;

*EFTA/FDCPA/CFDCPA*

10. An award of three times the maximum amount any civil remedy other than actual damages, pursuant to California Civil Code §3345;

*CLRA*

11. An order enjoining all named Defendants from engaging in the behavior at issue in Plaintiff's CLRA cause of action;

12. An award of costs of litigation and reasonable attorney's fees, pursuant to California Civil Code § 1780(e) against all named Defendants; and

*As to all claims above*

13. Such other and further relief this court may deem just and proper.

## JURY DEMAND

1. Plaintiff demands a trial by jury.

Respectfully submitted,

DATED: February 27, 2017

/s/ Stephen G. Recordon
STEPHEN G. RECORDON
Attorney for Plaintiff